### Whiting Paper Co. v. Henry Busse et al.

1. MORTGAGES—*An Indebtedness Must Exist.*—In mortgage transactions the debt is the principal thing to be considered; the mortgage is only the incident; so a mortgage purporting to secure a note which does not exist, can not be foreclosed as drawn, even though an indebtedness actually existed at the time it was executed.

2. SAME—*Not Negotiable Instruments—Assignees Subject to Equitable Defenses.*—A mortgage is not a negotiable instrument, and if an assignee seeks relief in equity, as he may by foreclosure, his bill will be subject to all the equitable defenses which could be made in case of a like bill filed by his assignor.

3. CHANCERY PRACTICE—*Answer to Amendments Containing Immaterial Matter.*—Where the court permits a complainant to amend his bill and his amendment when made contains no matter material to be answered, it is not error to refuse the defendant leave to answer such amendment.

Whiting Paper Co. v. Busse.

**Bill to Foreclose a Chattel Mortgage.**—Appeal from the Superior Court of Cook County; the Hon. Elbridge Hanecy, Judge, presiding. Heard in this court at the October term, 1900.   Affirmed.   Opinion filed May 6, 1901.   Rehearing denied June 3, 1901.

**Statement.**—October 4, 1899, Henry Busse, appellee, filed a bill against the Whiting Paper Co., appellant, Moses Harrison, Solomon H. Siegel, John E. Becker, Elizabeth Becker, Richard Reichel and Emil F. Baur, to foreclose a chattel mortgage on certain chattels pertaining to the printing business, and situated at the premises known as number 363 West Twelfth street in the city of Chicago. The defendants appeared and answered the bill, replicacations were filed, and the evidence was produced and heard before the chancellor in open court, and a decree rendered in favor of Busse, the complainant, to reverse which is the object of this appeal.

On the hearing the following documents, all of which relate to the property in question, were put in evidence :

A note of date March 22, 1897, for the sum of $800, payable to the order of Henry Busse, due in one year from date, signed John E. Becker, and a chattel mortgage of same date, from John E. Becker and Elizabeth Becker, his wife, to secure payment of said note, recorded March 23, 1897.   A bill of sale of date December, 1898, from Elizabeth Becker and John Reichel to Moses Harrison, acknowledged December 30, 1898, and recorded January 3, 1899. This bill of sale contains the following clause: "The above property is subject to a chattel mortgage of $800 held by Busse and to a chattel mortgage of $175 held by Barnhart Brothers & Spindler."   An unsigned note for $700, of date January 28, 1898, payable to the order of Emil F. Baur, twenty months after date, with interest, etc.   Also a chattel mortgage of same date from Elizabeth Becker and Richard Reichel to Emil F. Baur, purporting to secure payment of "one certain promissory note of even date for the sum of seven hundred dollars, made by Elizabeth Becker to the order of Emil F. Baur, and payable twenty months after

date, with six per cent interest," etc.   The mortgage does
not purport to secure anything except payment of the de-
scribed note.   Promissory note, dated January 24, 1899, for
$800, with interest at seven per cent per annum after date,
payable to the order of Henry Busse March 22, 1900, with
the power of attorney to confess judgment; signed by Moses
Harrison, S. H. Siegel and Solomon H. Siegel.   Also chattel
mortgage of same date, purporting to secure payment of
said notes, recorded February 24, 1889.   An assignment by
Emil F. Baur to the Whiting Paper Co., of date May 3,
1899, of the chattel mortgage from Elizabeth Becker and
Richard Reichel to Baur, of date January 28, 1898; acknowl-
edged and recorded May 3, 1899.   The assignment is not
indorsed on the mortgage, but is a separate instrument.
Release by Henry Busse of the chattel mortgage of date
March 22, 1897, from John and Elizabeth Becker to Busse.
Release dated and acknowledged May 6, 1899, and recorded
May 23, 1899.

The contest is between appellee, Busse, who filed his bill
to foreclose the mortgage of date January 24, 1899, from
Harrison and Siegel to him, and the Whiting Paper Co., which
claims under the mortgage of January 28, 1898, from Eliza-
beth Becker and Reichel to Baur, and by assignment of that
mortgage by Baur.

It appears from the evidence that the note which the
mortgage to Baur purports to secure was never signed; that
in fact there was no note such as is described in the mort-
gage, made or signed by Elizabeth Becker at the time of the
execution of the mortgage, and that the paper purporting
to be a promissory note for $700 payable to the order of
Emil P. Baur, was never signed, and it was put in evidence
unsigned by appellee's solicitor.   Baur, who is John E.
Becker's brother-in-law, testified that the Beckers were in-
debted to him for cash advanced to them and for services as
their physician, and requested security; that they agreed on
$700 as about the amount due him, and that they would
give him a mortgage; that Mr. Becker brought the draft of
the mortgage and note to his office, and he looked at them

and told Becker to get his wife to sign them; that the next morning Becker came to his office again with the note and mortgage, when he looked at the mortgage, saw it was signed, and told Becker to have it recorded; that he, Baur, did not have time to do so, but said that he would keep the note, which he did, doubling it up and putting it in his desk, and Becker took the mortgage to the recorder's office. Baur further testified that he did not ascertain that the note was unsigned until the latter part of December, 1898, or first part of January, 1899. The Whiting Paper Company never had possession of either the unsigned note or the Baur mortgage, by assignment of which it claims, but about the 15th of February, 1899, Becker, who was his wife's agent by request of appellant's attorney, procured her to sign a note of the same date as the Baur mortgage, and as is in said mortgage described, and Emil F. Baur, to whom the note was payable, indorsed it to appellant, the Whiting Paper Co.

Dickerman, appellant's attorney, testified that about the middle of February, 1899, he drafted the note and gave it to Mr. Becker to have signed, and in about two or three weeks afterward it was returned, signed, to his, Dickerman's, office, so that it was about February 26 or March 6, 1899, when it came, signed, to the possession of appellant's attorney.

In the meantime, and on February 24, 1899, the chattel mortgage from Harrison and Siegel to appellee was recorded. How Harrison and Siegel came to excute a note and a mortgage of the property to appellee is explained by the evidence as follows: Elizabeth Becker was the owner of the goods and chattels, and used them in the printing business at number 363 West Twelfth street, Chicago, her husband acting as agent in the business. The evidence indicates that Richard Reichel was interested with Mrs. Becker in the printing business, but the extent of his interest does not appear. In the latter part of the year 1898, Mark M. Harrison, acting for his father, Moses Harrison, entered into negotiations with John E. Becker for the purchase of the property. The property was purchased by Harrison about December 30, 1898, for the expressed consideration of

$2,000, as evidenced by the bill of sale from Mrs. Becker and Reichel to Harrison.

It seems from the evidence that a partnership between Elizabeth Becker and Mark Harrison, who Mr. Becker supposed was Moses Harrison, was talked of and perhaps contemplated by Becker, and an agreement of partnership, dated December 31, 1898, and purporting to be between Elizabeth Becker and Moses Harrison, but signed by Elizabeth Becker only, was put in evidence by appellant. However, no such partnership was formed. Mark Harrison testified that when he was thinking of buying the place he looked up what was against it, and found two mortgages, and he inquired of Becker what the Baur mortgage was for, and Becker said that it was given to protect him if any one should sue him, that there was no consideration for it, and he could get it any time. Becker testified that he went to Baur, and told him that he, Becker, was going into business with Harrison, and that Harrison wanted to see all the papers pertaining to the business; that he got the mortgage from Baur and the next day handed it to Harrison. There is some conflict in the evidence as to Becker's authority in respect to the mortgage, after its delivery by Baur to him. Becker testified that he handed the mortgage to Harrison for him to see, not to release it; that Harrison wanted to know if it could not be released, and witness told him Baur would have to do that; that Harrison wanted witness to release it in Baur's name, which he refused to do. Becker further testified that he told Baur that Harrison demanded to see all the papers before he, Harrison, would go into partnership with him, so he would not be responsible for any other claims or mortgage, and also told Baur that he, Becker, was to pay him, Baur, and Harrison was to take care of the Busse mortgage. This occurred in the examination of Becker:

"The Court: Wasn't it to be released until you made money enough out of the business to release it?

A. No.

The Court: Q. You were not to take up that mort-

gage at all ?    A.    Well, I was to pay it off as I made the money; that is the idea.

The Court:    Q.    Was it to be released—taken off the records?    A.    Yes, after we were in partnership.

The Court:    Q.    Yes?    A.    Yes; then it was to be taken off.

The Court:    Q.    Then Baur was to trust to you personally to pay him the amount?    A.    Yes."

Baur testified as follows:

" Becker came to me some time, either in December or the latter part of December, 1898, or the fore part of January, 1899, stating his circumstances, stating that he was going into partnership with the man, Harrison, and said that it would be necessary— that this man, Harrison, was going to take up the first mortgage provided he would take care of the second.    Well, I said to him, I said that he could have the second mortgage, my mortgage, providing I could get some other security.    He said that was the only way he could go into partnership, by taking care of my mortgage.    I says, whatever you decide on will be satisfactory to me, providing I get some security afterward."

This witness further testified that he got the mortgage from the recorder's office in the latter part of December, 1898, or the fore part of January, 1899, and that he had then with him the unsigned note.    The unsigned note and mortgage were both delivered by Baur to Becker and by the latter to Harrison.    What occurred after their delivery to Harrison appears from the following evidence.    Mark Harrison testified:

" Mr. Becker and myself went out to Busse's house and we found him sick in bed with a broken collar bone, or something like that, and we wanted to see him and they wouldn't let us in.    *    *    *    We left there and came back the next day, Mr. Becker and myself, and we told the other Mr. Busse that we had to see Henry Busse, and he took us in that day, and Mr. Becker told Mr. Busse that he was going to transfer the place to me, and Henry was an old friend of his, would transfer the mortgage over from him to me for my father.    *    *    *    Mr. Busse stated then that he was very sick and he didn't know that he could do anything.    Well, Mr. Becker said, it would be a great favor to him and he thought I would be more able to pay it than Mr. Becker was.    Mr. Busse says then, ' John, what has become

of that other mortgage that was on that place, that one given to your brother-in-law ?' Becker said, ' You know that was never given for anything; it was the agreement that it was to be given to Harrison and he has got it now.' I took it out of my pocket and showed it to Mr. Busse. * * * I showed him the mortgage and note supposed to be given by Mrs. E. Becker to E. F. Baur."

The witness further testified:

" Mr. Busse stated that he would see about it or have his father see his lawyer or telephone his lawyer. So Mr. Becker and myself left Mr. Busse—didn't hear of him for a week or ten days, and Mr. Becker and myself went out to see Mr. Busse again, and we asked him why he had not done anything. We asked Busse and he said his father had a mortgage on it, but he wanted to know what was the matter with the second mortgage; if I was sure I had it. The first time I showed it to him he could not lift his arm. I says, ' I will take it up to Mr. McCulloch first and let him see it.' * * * So Mr. Busse then said he would attend to it right away—he would telephone himself—and after that it was attended to all right."

The witness states that he then called on Mr. McCulloch, appellee's solicitor, and left with him the Baur mortgage and the unsigned note.

The testimony of Busse, appellee, corroborates Harrison as to what occurred when Becker and Harrison interviewed Busse. Mr. McCulloch, appellee's solicitor, testified, in substance, that John E. Becker and Mark Harrison came to his office in January, 1899, and Becker said to him that they had sold the property to Harrison, and that Busse had agreed to extend the mortgage he had on the property, and take it in the shape of a new mortgage from Harrison; that Becker said, in answer to a question of the witness, that there were two mortgages subsequent to the Busse mortgage; one to Baur and one to Barnhart Bros. & Spindler, but that the latter did not cover the property in the Busse mortgage; that he, Becker, had agreed with Harrison to give him the property free from the Baur mortgage, and had surrendered that mortgage to Harrison. "Harrison had it then in my office and produced it, and a paper which Becker said was the paper which was to have been the note,

which paper and the mortgage have been put in evidence. Becker said that the mortgage was given to his brother-in-law for his, Becker's protection; that there was no consideration for it; that in fact, it had never been delivered; that he, himself, put it in the recorder's office. The papers were then left with me. Mr. Becker said they might be left with me to hold, as evidence of the surrender and cancellation of the mortgage, and I have held them ever since, except on one occasion, when I loaned them to Harrison." The witness subsequently saw Baur and conversed with him, in respect to which conversation he testified, in substance, as follows :

"I told Doctor Baur that I was attorney for Henry Busse; that he had a mortgage on the printing establishment which was formerly owned by the Beckers; that there was some one in possession of the plant claiming under a mortgage to him; that I had the mortgage with me, and wanted to know how any one else claimed under it. I also told him how the mortgage came into my possession, and that Becker had said that there was no consideration for it, that it was given only for his protection. He, Baur, said, 'Well, there was some consideration. I doctored Mrs. Becker, and I let them have money, some money. However, this is Mr. Becker's business, and I don't want to talk about it. You see the Beckers; they live over here just a little ways.' He directed me to the Becker house, where I went and inquired for Mr. Becker. He was not at home, but I saw Mrs. Becker, and inquired as to what she knew of how any one could claim under the mortgage. She said Mr. Dickerman, attorney for the Whiting Paper Company, had got her to sign a new note; also that at the time the Baur mortgage was executed, there was no money paid; that Dr. Baur was a relative and had rendered services as a physician and had given them some money from time to time."

Busse testified that when he delivered the release of the first Busse mortgage at the office of Dickerman, appellant's attorney, he told Dickerman that he had a mortgage of the same property from Harrison and Siegel. Dickerman testified that in March or the first part of April, while investigating to determine whether the Whiting Paper Company

should take an assignment of the Baur mortgage, he called on Busse and asked him whether the 1897 mortgage from Becker to him had been paid; that Busse said it had, when witness asked him how, and he said by his taking a mortgage from Harrison and Siegel.

YOUNG, MAKEEL, BRADLEY & FRANK, attorneys for appellant.

MCCULLOCH & MCCULLOCH, attorneys for appellee Busse; S. S. GREGORY, of counsel.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The preceding statement contains the main facts in the case. It appears from the evidence, and is not controverted, that appellant never had possession of either the Baur mortgage or the unsigned note, the payment of which it purports to secure. It also appears that what appellees' witness, Dickerman, calls the new note, and which is identical as to date and terms with the unsigned note, only differing from it in being signed, was drafted by Dickerman, appellant's attorney, about the middle of February, 1899, which was about three weeks after the mortgage from Harrison and Siegel to Busse was executed; that when it was drafted, Dickerman gave it to Becker to have it signed and that it was returned to Dickerman's office in two or three weeks after that time, which would be February 28 or March 7, 1899, or from fourteen to twenty-one days after the mortgage from Harrison and Siegel to appellee was recorded. So that prior to the execution of the latter mortgage there was no note in existence such as that described in it, and the payment of which that mortgage purports to have been made to secure.

In Ogden v. Ogden, 180 Ill. 543, it appeared that a mortgage was executed purporting to secure payment of a promissory note, and no note was executed by the mortgagor at the time of the execution of the mortgage, but that in six years after the execution of the mortgage the mortgagor made a

note dating it as of the date of the mortgage, and corresponding with the description of a note in the mortgage. But between the time of the execution of the mortgage and the making of the note, the mortgagor conveyed the mortgaged premises to a third party. On these facts the court held that the mortgage was invalid as to the mortgagor's grantee. The court say :

"The debt is the principal thing and the mortgage only the incident. While this court has held in several cases that the giving of renewal notes or the merging of the notes in a judgment does not operate to release the mortgage lien (Rogers v. Trustees of Schools, 46 Ill. 428; Citizens' Nat. Bank v. Dayton, 116 Ill. 257), yet it has not been held, to our knowledge, that a mortgage purporting to secure only a supposed note never made can be foreclosed as drawn, even though an indebtedness, which it does not purport to secure, existed. Thus in Branhall v. Flood, 41 Conn. 68, where the mortgage purported to secure a note for $1,000 which was never given, it was held void as against an attaching creditor, although the mortgagor was at the time indebted to the mortgagee in three-fourths of that amount, and had agreed to advance goods to the amount of the remaining one-fourth, and the purpose in making the mortgage was to secure the total amount of the $1,000. It was said in Metropolitan Bank v. Godfrey, 23 Ill. 579, that 'the spirit of our recording system requires that the record of a mortgage should disclose with as much certainty as the nature of the case will admit, the real state of the incumbrance.'"

In the present case no such note as that described in the Baur mortgage, or any note from Elizabeth Becker to Baur, so far as appears from the evidence, had been made January 24, 1899, when the mortgage from Harrison and Siegel to appellee was executed.

In so far as the date of instruments and of recording are concerned, appellant can not, as equitable assignee of the mortgage by virtue of the assignment to it of the note, claim priority over the mortgage from Harrison and Siegel to appellee, because that mortgage was recorded February 24, 1899, and the note with Baur's indorsement was not delivered to appellant's attorney, as he, in substance, testi-

fied, until about February 28 or March 7, 1899. Still less can appellant claim such priority by virtue of the formal assignment of the mortgage itself, which was not made till May 3, 1899.

If a bill were filed by Baur for the foreclosure of the Baur mortgage against the Beckers, appellee Henry Busse and others interested, his conduct in the premises, as shown by the statement preceding this opinion, would, in our opinion, preclude relief as against appellee. He put John E. Becker, the husband and agent of one of the mortgagors, in possession of the mortgage and unsigned note, knowing, as he himself testified, that it was Becker's intention to assume the indebtedness of the Beckers to him, and that Harrison was to take up the first mortgage.

It is evident, as we think, from the testimony of Doctor Baur and Becker, that the former delivered the mortgage to Becker with the understanding that it was to be surrendered, he, subsequently, to have other security. He said to Becker, "Whatever you decide on will be satisfactory to me, providing I get some security afterward," and when McCulloch inquired of him how any one could claim under him while he, McCulloch, had the mortgage in his possession, he said: "That is Becker's business and I don't want to talk about it." A mortgage is not a negotiable instrument, and if the assignee of a mortgage seeks relief in equity, as he may, by the foreclosure of the mortgage, his bill is subject to all equitable defenses which could be made in case of a like bill filed by his assignor. Olds v. Cummings, 31 Ill. 188; McAuliffe v. Reuter, 166 Ib. 491, 496.

We think the evidence tends strongly to support the view that the Baur mortgage was made to hinder and delay the creditors of the Beckers. The evidence of several witnesses is that Becker stated that it was made for his protection and was without consideration. Notwithstanding the evidence shows that there was an indebtedness of the Beckers to Doctor Baur sufficient to support a mortgage, yet we think the circumstances in evidence tend to show that Dr. Baur's motive in taking the mortgage was to protect the

Beckers from their creditors. He did not act in the premises as a creditor desiring to protect himself, and looking exclusively to his own interest, ordinarily would. He was not sufficiently interested, apparently, to observe whether .the paper described in the mortgage as a note was signed; he would not even spare the time necessary to take the mortgage to the recorder's office, but, for that purpose, intrusted it to Becker, the agent of the mortgagor. Subsequently he turned it and the unsigned note over to Becker with apparent and, as we think, actual authority to do what he pleased with them, and when Mr. McCulloch sought information from him, he told him, substantially, that the matter was none of his, Baur's, business; that it was Becker's business.

Dr. Baur testified that nothing was paid to him by appellant for the assignment to it of the Baur mortgage. It would be unreasonable to presume that appellant paid nothing for the assignment, and, therefore, reasonable to presume that if it did not pay Dr. Baur, it paid some other person or persons. This may have been and probably was another instance of Dr. Baur's generous assistance of his relatives, the Beckers.

December 10, 1900, the date of the decree, the court, by order of that date, permitted appellee to amend his bill, and ordered that appellant's answer to the original bill should stand as an answer to the bill as amended. Appellant's counsel complain that the court would not allow appellant to answer the amendment. The only new matter in the amendment is the averment that long after the date of the mortgage, etc., Elizabeth Becker executed a note, and this fact was proved on the hearing and is relied on by appellant in argument, and we can not see how appellant is in the least prejudiced by the amendment, or want of specific answer thereto.

We find no reversible error in the record, and the decree will be affirmed.